AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Target Device, more fully described in Attachment A2 | )<br>)<br>)<br>)<br>)<br>)    Case No.    MJ20-654 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Target Device, more fully described in Attachment A2, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Possession with intent to distribute controlled substances; conspiracy to distribute; |
| 18 U.S.C. §§ 924(c), 922(g) | possession of a firearm in furtherance of drug trafficking; felon in possession of a firearm |

The application is based on these facts:

✓ See Affidavit of Andrew P. Weathers, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Andrew P. Weathers, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____10/13/2020_____

_____
*Judge's signature*

City and state: _____Seattle, Washington_____    Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>ATTACHMENT A2</u>**
**(Target Device to be Searched)**

This search warrant shall apply to the following **Target Device**:

**a)** **The Target Device:  The Target Device** is a black Samsung cell phone with a cracked screen currently located in the secure custody of Seattle FBI evidence control.

**ATTACHMENT B2**
**(List of Items to be Searched For and Seized)**

This warrant authorizes the government to search for and seize the following items in the **Target Device**:

Evidence, fruits, and/or instrumentalities of the following crimes: *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1); *Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), and 846; *Possession of a Firearm in Furtherance of Drug Trafficking*, in violation of 18 U.S.C. § 924(c); and *Felon in Possession of a Firearm*, in violation of 18 U.S.C. § 922(g):

      a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b.     Stored list of recent received, sent, and missed calls;

      c.     Stored contact information;

      d.     Stored photographs of narcotics, currency, firearms, or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or criminal associates, including any embedded GPS data associated with those photographs or videos;

      e.     Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wikr, Telegram, Signal, WhatsApp, and similar messaging applications.

USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**AFFIDAVIT OF ANDREW WEATHERS**

1

STATE OF WASHINGTON          )

2                                               )        ss

3 COUNTY OF WHATCOM          )

4

5        I, Andrew Weathers, being first duly sworn on oath, depose and say:

6        **I.        INTRODUCTION AND AGENT BACKGROUND**

7        1.        I am a law enforcement officer of the United States within the meaning of

8 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make

9 arrests for, offenses enumerated in 18 U.S.C. § 2516.

10       2.        I have been an FBI Special Agent since 2007.  I am currently assigned to

11 FBI Seattle's Safe Streets Task Force in Bellingham, Washington.  Among other things,

12 this task force investigates drug trafficking organizations and transnational organized

13 crime in North, Central, and South America.  Prior to becoming an FBI Special Agent, I

14 spent five years as a police officer in Flagstaff, Arizona.  In this capacity, I was assigned

15 to patrol duties and later to the Northern Arizona Metro Narcotics Task Force.

16       3.        During my career, I have investigated numerous drug trafficking offenses.

17 As part of these investigations, I have written, obtained, and executed search warrants

18 resulting in the seizure of illegal narcotics, firearms, and other contraband, as well as

19 electronic evidence of drug distribution.  I have also interviewed drug dealers,

20 confidential informants, and drug customers regarding the means and methods used by

21 drug traffickers.  Through this experience, I have gained an understanding of the manner

22 by which drug traffickers manufacture and distribute controlled substances, and the

23 various roles members of drug trafficking organizations serve in furtherance of the

24 organization's drug trafficking and money laundering activities.

25       4.        The facts in this affidavit come from my training, experience, and

26 information obtained from other agents and witnesses.

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.   PURPOSE OF THIS AFFIDAVIT

5.      I make this affidavit in support of an application for warrants authorizing the search of the following **Target Location** and **Target Vehicle**, which are further described below and in Attachment A1 (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachment B1 (attached hereto and incorporated by reference as if fully set forth herein), and of the following **Target Device**, which is further described below and in Attachment A2, for evidence, fruits and instrumentalities, as further described in Attachment B2, of the crimes of *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1); *Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), and 846; *Possession of a Firearm in Furtherance of Drug Trafficking*, in violation of 18 U.S.C. § 924(c); and *Felon in Possession of a Firearm*, in violation of 18 U.S.C. § 922(g), (collectively, the "Target Offenses") as described herein:

a.      **Target Location:** 16800 27th Avenue NE, Apt A305, Marysville, Washington, which is the residence of Erik MERCADO.  The **Target Location** is further described as Apartment A305 at the Villas at Lakewood apartments, which is a three-story multi-unit family housing building with tan over brown horizontal siding. Apartment A305 is located on the third floor at the top of an outside common access stairwell on the east side of the building.  The unit is clearly marked as "A305" on the side of the building.  The front door is the only entrance to the apartment and is clearly marked on third floor of the stairwell.

b.      **Target Vehicle:** A blue 2012 Chevy Cruz bearing Washington license plate BUR9510 and vehicle identification number (VIN) 1G1PF5SC2C7187019. The **Target Vehicle** is registered to Erik MERCADO, at 16800 27th Avenue NE, Apt A305, Marysville, Washington.  The legal owner is listed as MERCADO's mother, Cecilia Mercado-Benjume, at the same address (the **Target Location**).

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 2
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          c.     **Target Device:** A black Samsung cell phone with a cracked screen

2 currently located in the secure custody of Seattle FBI evidence control.

3      6.      For the **Target Location**, authority to search extends to all parts of the

4 property, including main structure, garage(s), storage structures, outbuildings, and

5 curtilage, and all vehicles, containers, compartments, or safes located on the property,

6 whether locked or not where the items described in Attachment B (list of items to be

7 seized) could be found.

8                    **III.    SOURCES OF INFORMATION**

9      7.      I make this Affidavit based upon personal knowledge derived from my

10 participation in this investigation and upon information I believe to be reliable from the

11 following sources and others:

12          a.     My training and experience investigating drug trafficking and related

13 criminal activity, as described above;

14          b.     Oral and written reports and documents about this and other

15 investigations that I have received from other federal, state and local law enforcement

16 agencies, including Washington State Patrol;

17          c.     Physical surveillance conducted by law enforcement officers that has

18 been reported to me directly or indirectly;

19          d.     Washington State Department of Licensing records;

20          e.     Public records; and

21          g.     Photographs and other records obtained via search warrant and

22 subpoena

23      8.      Since this Affidavit is intended to show only that there probable cause for

24 the requested search warrants, I have not included every fact known to me concerning

25 this investigation.  I have set forth only the facts that I believe are necessary to establish

26 probable cause for the search warrants for the **Target Location, Target Vehicle,** and

27 **Target Device**.

28

## IV.   BACKGROUND INFORMATION RE: ERIK MERCADO

9.      Federal court records show that on May 9, 2014, MERCADO pleaded guilty to Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the Indictment, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, in *United States v. Felipe Mercado-Gonzalez, et al.*, CR14-0082RSL, Western District of Washington. On August 8, 2014, the Court sentenced MERCADO to 36 months in custody, followed by three years of supervised release.  The judgment reflects that MERCADO shall not commit another federal, state or local crime; shall not unlawfully possess a controlled substance; and shall not possess firearms and ammunition.

10.      Court records show that on April 6, 2018, the Court revoked MERCADO's first term of supervised release due to MERCADO's violating his supervised release by failing to report for urinalysis testing, failing to participate in substance abuse treatment, leaving the WDWA without permission, and failing to notify the probation officer of a change in residence.[1]  The Court sentenced MERCADO to nine months in custody to be followed by 24 months of supervised release.

11.      Court records show that MERCADO's federal supervised release was again revoked, on December 19, 2019, for consuming alcohol and using marijuana.[2] The Court sentenced MERCADO to three months in custody, followed by 20 months of supervised release.

---

[1] A federal supervised release violation relating to new state charges was dismissed.  MERCADO subsequently addressed that matter in Skagit County Superior Court, where he pleaded guilty in case no. 17-1-1420-5, to Assault 2, Deadly Weapon.  MERCADO was sentenced on June 20, 2019, to 14 months in state custody and 18 months of community custody.

[2] A federal supervised release violation relating to new state charges was dismissed.  MERCADO subsequently addressed that matter in how ever his NCIC record does not have a recorded disposition.  According to Arlington Police Department reports, MERCADO was driving a blue 2012 Chevrolet Cruz (WA/AVE6438) when MERCADO was traffic stopped on November 10, 2019.  WA DOL records reflect that this is the same **Target Vehicle** through VIN comparison, with an earlier plate.  The reports also indicate that MERCADO's address was the **Target Residence.**

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 4
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    12.    Court records show that on September 29, 2020, the Court issued a

2  summons scheduling an initial appearance on MERCADO's alleged supervised release

3  violations on October 23, 2020.

4    13.    Records checks confirm that MERCADO is currently under federal and

5  DOC supervision.

6                          **IV.    PROBABLE CAUSE**

7    14.    On October 5, 2020 the Skagit County Interlocal Drug Enforcement Unit

8  (SCIDEU) was contacted by Washington State Patrol Trooper Wilcox (WSP case 20-

9  017087). Trooper Wilcox explained that earlier in the morning she conducted a traffic stop

10  on I-5 within Skagit County.  During that traffic stop, Trooper Wilcox arrested Erik

11  MERCADO, the driver and sole occupant of the vehicle, on a Department of Corrections

12  (DOC) warrant for escape from community custody and DUI.  Trooper Wilcox explained

13  to SCIDEU detectives that during the investigation she found several Percocet 30 mg pills

14  in Mercado's pocket. Trooper Wilcox said that she applied for and was granted in Skagit

15  County District Court a search warrant for the vehicle that Mercado was driving. During

16  the execution of the search warrant Trooper Wilcox said that she seized baggies, a scale

17  with brown tar residue on it, a bag containing suspected Methamphetamine, a bag

18  containing suspected Cocaine, a handgun and a box of ammunition. The handgun returned

19  conformed stolen out of Bellingham.  I have also reviewed Trooper Wilcox's probable

20  cause affidavit regarding the arrest of MERCADO.

21    15.    Trooper Wilcox has been employed by the Washington State Patrol since

22  November of 2015 and has served as a commissioned law enforcement officer for

23  approximately three years.  Trooper Wilcox is currently assigned as a Trooper to the

24  Burlington Office in Skagit County Washington.  Trooper Wilcox's duties involve

25  enforcing the laws of the State of Washington, including both criminal and non-criminal

26  traffic related offenses.  Trooper Wilcox's training and experience regarding

27  investigations of these crime(s) includes the Washington State Patrol Basic Academy,

28

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 5
USAO # 202R00966

1  Standardized Field Sobriety Testing (SFST) Training, 16-Hour Advanced Roadside

2  Impaired Driving Enforcement (ARIDE) course in November of 2017, and Breath

3  Alcohol Content (BAC)/SFST Refresher Training. The most recent BAC/SFST Refresher

4  Training Trooper Wilcox attended was in October of 2019.

5       16.    Trooper Wilcox has observed and personally conducted hundreds of DUI

6  investigations, both alcohol and drug related.  Trooper Wilcox's training regarding these

7  investigations includes the Washington State Patrol Academy and ARIDE. During

8  ARIDE Trooper Wilcox was provided with further training to observe, identify, and

9  articulate the signs of impairment related to drugs, alcohol or a combination of both.

10  Trooper Wilcox's current Breath Test Program Permit Card expires in October 2022.

11      17.    Trooper Wilcox has been involved in numerous drug related investigations

12  and seizures to include the possession of drugs, paraphernalia and items used in the

13  distribution/selling of drugs. The training I received at the Washington State Patrol

14  Academy, ARIDE, and the Under Cover School regarding the involved crime(s) includes

15  but is not limited to: drug related crimes and activities, including the consumption and

16  methods of consumption of drugs, identification of paraphernalia, sales of drugs and

17  devices used, both technical and commonly used terminology, hands-on demonstrations

18  to assist with the detection of drugs and how drugs are contained and concealed.

19      18.    On October 5, 2020, Trooper Wilcox was traveling southbound on I-5 near

20  milepost 221 in Skagit County.  Trooper Wilcox observed a blue Chevrolet Cruz (WA

21  BUR9510) (the **Target Vehicle**), also traveling southbound, ahead of her. Trooper

22  Wilcox observed the **Target Vehicle** was bouncing back and forth form line to line.

23  Trooper Wilcox performed a registration check for the **Target Vehicle**, and it returned

24  that the registered owner, Erik MERCADO, had a felony warrant for DOC escape

25  community custody. Trooper Wilcox activated her emergency lights to initiate a traffic

26  stop. The **Target Vehicle** slowly came to a stop on the right shoulder near milepost 221.

27

28

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 6
USAO # 202R00966

19.     Upon contact with the **Target Vehicle**, Trooper Wilcox could smell a medium odor of burnt marijuana coming from it. Trooper Wilcox observed that MERCADO was the driver and sole occupant of the vehicle.  Trooper Wilcox observed that MERCADO's eyes were glossy and that he was on the phone talking to someone telling them his location. Trooper Wilcox observed that MERCADO was shaking.

20.     Trooper Wilcox asked MERCADO to step out of the **Target Vehicle**. MERCADO agreed to perform voluntary SFSTs, and Trooper Wilcox observed 0/6 clues on the HGN test, 5/8 clues on the Walk and Turn test and 3/4 clues on the One Leg Stand test. MERCADO estimated the passage of 30 seconds in 36 actual seconds. Trooper Wilcox observed MERCADO's eyelids were fluttering and he was swaying front to back. MERCADO admitted to consuming a bowl of marijuana earlier. Based on Trooper Wilcox's training, experience, and totality of the circumstances, Trooper Wilcox determined MERCADO was under the influence and should not have been driving a motor vehicle. He was placed in custody and read his *Miranda* Rights.

21.     Trooper Wilcox performed a search of MERCADO's person incident to arrest and in his pants pocket, Trooper Wilcox located a clear baggie with four round pills in it. The pills appeared to have a pressed logo on them. MERCADO stated they were Percocet. He said he did not know if they had fentanyl in them.

22.     MERCADO refused a consent search of his vehicle. Trooper Wilcox observed in plain view on the driver's side door pocket of the vehicle there was a clear plastic baggie and an object that appeared to be a scale. MERCADO also refused a voluntary blood draw.

23.     A driver's check for MERCADO confirmed he had a felony DOC warrant for assault 2, has one prior DUI in the last 10 years, is a supervised person, is a violent offender, is a gang member associate and has VUCSA history. Trooper Wilcox wrote and applied for a search warrant for the MERCADO's blood and the vehicle (the **Target Vehicle**). Both warrants were approved by Court Commissioner Jenifer Howson.

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 7
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24.     While executing the vehicle search warrant, Trooper Wilcox located multiple small clear plastic baggies, a baggie containing a white crystalized substance, and a scale in the driver's side door.  Trooper Wilcox observed a black handgun under the driver's seat. The firearm appeared to be loaded. As MERCADO is a convicted felon, Trooper Wilcox then wrote and applied for an amended search warrant to retrieve the firearm. The warrant was approved by Court Commissioner Jenifer Howson.

25.     Trooper Wilcox retrieved the firearm, and it had a round in the chamber. Trooper Wilcox performed a check on the firearm through WSP Communications and was advised that it was a stolen firearm out of Bellingham. The firearm is further described as a 9mm Sig Sauer P938 handgun bearing serial number 52B089459.

26.     In the **Target Vehicle's** trunk, Trooper Wilcox found a blue backpack. In a pocket in the blue backpack, there was a scale next to a plastic bag containing a white powder. Based upon Trooper Wilcox's training and experience, Trooper Wilcox believed the white powder is cocaine.[3] In the trunk where the spare tire is stored, Trooper Wilcox located a firearm holster and a box containing 29 rounds of .38 caliber ammunition. The ammunition was a different caliber than the handgun.  Trooper Wilcox also located multiple papers with MERCADO's name on them in the trunk. Per DOL, Erik MERCADO is the registered owner of the **Target Vehicle**, and his mother is the legal owner of the vehicle.

27.     Based upon MERCADO being the registered owner of the vehicle, MERCADO being the only occupant in the **Target Vehicle**, the presence in the trunk of MERCADO's paperwork by the blue backpack containing suspected drugs and a scale, the stolen firearm being under MERCADO's seat, and the four pills being located in MERCADO's pocket, Trooper Wilcox believed the items located/seized from the contact were MERCADO's. Trooper Wilcox asked MERCADO where he got the firearm, and

---

[3] The white powder was not field tested due to officer safety concerns.

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 8
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MERCADO stated he did not want to talk to Trooper Wilcox. Based on the amount of the white powdery substance in the blue back pack, the scale, and the small clear baggies in the **Target Vehicle**, Trooper Wilcox believed MERCADO possessed the suspected cocaine with the intent to deliver it.

28.     After the search of the **Target Vehicle** was concluded, it was released to MERCADO's mother.

29.     Trooper Wilcox transported MERCADO to Skagit Valley Hospital for the blood draw. The blood draw was executed and toxicology results are pending.  After the blood draw was executed, Trooper Wilcox transported MERCADO to the Skagit County Jail.

30.     WSP Communications has advised Trooper Wilcox that MERCADO's firearms rights had not been restored, and that Bellingham PD has confirmed that the firearm was reported stolen.

31.     Trooper Wilcox told detectives that during the search of MERCADO, Trooper Wilcox located a black cell phone (the **Target Device**) on MERCADO's person. Trooper Wilcox advised that MERCADO's cell phone (the **Target Device**) was taken, along with MERCADO, to the Skagit County Jail.  As of today's date, MERCADO remains in custody at the Skagit County Jail.

32.     On October 6. 2020, Task Force Officer (TFO) Detective Paul Pacini called the Skagit County Jail and confirmed that there was a black cell phone in MERCADO's personal property at the Skagit County Jail. On October 7, 2020, detectives were granted a warrant in Skagit County District Court in order to obtain the cell phone (the **Target Device**) from Mercado's personal property at the jail.

33.     The **Target Device** is further described as a black Samsung cell phone with a cracked screen.  The **Target Device** is presently in the secure custody of the FBI at Seattle Division evidence control room, 1110 Third Avenue, Seattle, Washington

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 9
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     I have reviewed the photographs taken in conjunction with Trooper Wilcox's search of the **Target Vehicle**, prior to its release to MERCADO's mother.

35.     During the search of the vehicle, Trooper Wilcox observed and photographed another black cell phone with a white "KING" sticker on the back. Trooper Wilcox recognized the term "KING" to be a reference to the South Side Kings Sureno gang in Skagit County.  Trooper Wilcox photographed the cell phone, however did not seize it, and left it in the **Target Vehicle** which was later released to MERCADO's mother.   Washington Department of Corrections indicate that MERCADO is a validated Sureno gang member.  Based on my training and experience and discussions with other law enforcement officers, I am aware that the South Side Kings are a Skagit County -based Sureno gang.  Investigators believe that the presence of the "KING" sticker on the phone that was in the **Target Vehicle** with MERCADO is consistent with MERCADO being the user of this phone.

36.     Trooper Wilcox photographed the **Target Vehicle**, seized evidence, and the **Target Vehicle** contents during the search warrant execution.  The photographs were reviewed and clearly depict a sandwich sized baggy of a white powder that later field tested positive for cocaine, a digital scale with brown residue, and smaller redistribution size baggies.  Based on my training and experience, the above described items were used in furtherance of drug trafficking.

37.     Investigators believe that MERCADO resides with his mother at the **Target Location**.  This is the address on his WA driver's license and is the address to which the **Target Vehicle** is registered.

38.     Additionally, after MERCADO was arrested on October 5, 2020, investigators have spoken with MERCADO's federal probation officer, who confirmed this the **Target Location** is his address of record and that the officer has visited MERCADO at this address.  The probation officer advised MERCADO lives in the apartment with his mother and that his bedroom is located at the end of the hall.

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 10
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

39.     On October 8, 2020, investigators conducted surveillance of the **Target Location**.  Investigators observed the **Target Vehicle** parked in a parking stall at the **Target Location**.

40.     The seized drugs were transferred to the Seattle FBI and are now located in Seattle FBI evidence control.  The weights in packaging listed in Trooper Wilcox's report and received by Seattle FBI are as follows: four (4) M-30 [4]pills containing suspected fentanyl, one baggy with 36.7 grams of cocaine, one baggy 2.4 grams of suspected methamphetamine.  The weights include the baggy they were seized in, which is typically less than 2 grams in my training and experience.  The overall weight of the cocaine is greater than a personal use quantity and would be considered a distribution weight.

41.     On October 7, 2020, detectives tested the white powder that was seized from the **Target Vehicle** using a TruNarc device, and it came back presumptive positive for cocaine.  The approximate weight of the cocaine in the baggy is 36.7 grams.

42.     Based upon my training and experience in drug investigations over an ounce of cocaine is a dealer amount and more than what a mere user would call personal use. Personal use of cocaine is often purchased by the gram for $80-$120 per gram depending on quality. The different variety of drugs, the scale, and packaging is consistent with someone who is dealing controlled substance(s).

43.     Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

        a.      Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value.  These items are generally kept in locations where drug traffickers believe their property is secure and

---

[4] The M-30 pills seized are believed to be counterfeit and are not pharmaceutical grade due to their appearance. Counterfeit M-30 pills often usually contain fentanyl.

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 11
USAO # 202R00966

1   will remain undetected from law enforcement, such as inside their homes, vehicles and

2   storage lockers.

3            b.      Traffickers of controlled substances commonly maintain addresses,

4   vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

5   telephone numbers of their suppliers, customers and associates in the trafficking

6   organization and it is common to find drug traffickers keeping records of said associates

7   in cellular telephones and other electronic devices.  Traffickers almost always maintain

8   cellular telephones for ready access to their clientele and to maintain their ongoing

9   narcotics business.

10            c.      Traffickers maintain evidence of their criminal activity at locations

11   that are convenient to them, including their residences vehicles, and storage lockers.  This

12   evidence often includes more than contraband and paraphernalia and includes financial

13   records, records of property and vehicle ownership, records of property rented, records of

14   post office boxes used to ship and receive contraband and currency, records of other

15   storage facilities used to hide drugs or currency, and other documentary evidence relating

16   to commission of, and proceeds from, their crimes.  Narcotics traffickers sometimes take

17   or cause to be taken photographs and/or video recordings of themselves, their associates,

18   their property, and their illegal product, or have photo or video security systems that

19   record images from their homes or property.  These individuals usually maintain these

20   photographs and recordings in their possession or at their premises, in a safe place.  Such

21   evidence may be kept at a safe location for a long time after the drug deal(s) to which

22   they pertain are completed, if the location remains under the control of the trafficker.

23            d.      During the execution of search warrants, it is common to find

24   papers, letters, billings, documents, and other writings which show ownership, dominion,

25   and control of vehicles, residences, and/or storage units.

26            e.      Persons trafficking and using controlled substances commonly sell

27   or use more than one type of controlled substance at any one time.

28

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 12
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.      Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution.  This paraphernalia often includes, but is not limited to, scales, plastic bags, pill presses and cutting/diluting agents and items to mask the odor of drugs

g.      Traffickers often maintain weapons, including guns and ammunition, in secure locations such as their residences and storage lockers, in order to protect their drugs and drug proceeds.  Traffickers that possess or utilize firearms are also known to possess and use body armor in furtherance of their criminal activity.  Sometimes drug traffickers trade drugs for firearms and vice versa.  Of note, in this case, the firearm that was seized from the **Target Vehicle** was a different caliber from the other ammunition recovered in from the **Target Vehicle**, leading investigators to believe MERCADO may possess another firearm matching that ammunition may be located within the vehicle and/or residence.

h.      Traffickers often have false identification documents and identification documents in the names of others.

i.      Drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations such as a vehicles and storage locker, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives and are maintained there for long periods of time.  Drug traffickers commonly have money counters and money bands.  Increasingly, it is common for drug traffickers to also use cryptocurrency, and evidence of this use would include alphanumerical multi-digit "wallets" and QR codes.

j.      Illegal drug trafficking is a continuing activity over months and even years.  Illegal drug traffickers will repeatedly obtain and distribute controlled substances

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 13
USAO # 202R00966

on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which fluctuates in size depending upon various factors, including the demand and supply for the product.  I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

k.      Drug traffickers often have records or evidence related to how the proceeds were spent or concealed and often maintain this information for long periods of time in their residences or safe deposit boxes.  Evidence may include jewelry and/or vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts. The use of bank accounts is a common money movement technique used by drug traffickers to receive payment for narcotics from customers outside of their geographic region.  It is common for a trafficker to use several bank accounts for this purpose simultaneously in an attempt to avoid detection by the financial institutions and/or law enforcement.  The use of multiple accounts, and the commingling of illicit funds with legitimate funds in particular, is often part of the plan to conceal the illegal activity or may be part of the overall integration mechanism by which the illicit funds are made to appear as part of the legitimate income so that only a small portion of or even none of the funds from an account are seized.

44.      Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates,

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 14
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

b.      The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of a conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user.

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 15
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

        c.     Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

        d.     Photographs and videos on a cellular telephone are evidence because they help identify the user of the phone, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Photos and videos also identify associates who may be engaged in drug trafficking with the phone's user. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.  Also, digital photos often have embedded "geocode" information within them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

        e.     Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

        f.     It is common for drug traffickers to use encrypted means of communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid detection by law enforcement.  It is common for drug traffickers to install and use these apps on their phones in order to make encrypted calls and send encrypted messages.

## V.    CONCLUSION

    45.    Based on the information set forth herein, there is probable cause to search the **Target Location** and **Target Vehicle**, as described in Attachment A1, for evidence, fruits and instrumentalities of the Target Offenses, as further described in Attachment B1,

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 16
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and the **Target Device**, as further described in Attachment A2, for evidence, fruits and

2  instrumentalities, of the Target Offenses, as further described in Attachment B2.

3          46.      As set forth above, the **Target Device** is already in law enforcement's

4  possession.  Because the execution of the requested warrant for the **Target Device** does

5  not involve the physical intrusion onto a premises, I submit there is reasonable cause for

6  the Court to authorize execution of the warrant for the **Target Device** at any time in the

7  day or night.

8

9

10                                                  _____

11                                                  Andrew P. Weathers
                                                    Special Agent
12                                                  Federal Bureau of Investigation

13

14          The above-named agent provided a sworn statement attesting to the truth of the

15  contents of the foregoing affidavit on the  13 th day of October, 2020.

16

17                                                  _____

18                                                  Honorable Brian A. Tsuchida
                                                    Chief United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT A. WEATHERS - 17
USAO # 202R00966

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970